IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FREDDIE EUGENE WOOD, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-465-WKW-SMD |
| ) | |
| DARYL BAILEY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case arises from the dismissal of a State criminal prosecution against pro se Plaintiff Freddie Eugene Wood, Jr. ("Wood") that was initiated based on an investigation conducted by the Alabama Board of Medical Examiners ("ABME"). After the State criminal matter concluded in his favor, Wood filed suit in the Circuit Court of Montgomery County, Alabama, asserting federal and state law claims against various government officials in both their official and individual capacities. Defendants removed the case to this Court. Not. of Removal (Doc. 1). Following removal and Wood's two amended complaints (Docs. 6, 59), Defendant Michael Thomas ("Thomas") filed a Motion to Dismiss (Doc. 62), which is pending before the Court. For the following reasons, the undersigned recommends that Thomas's Motion to Dismiss be granted.

**I.     BACKGROUND**

In his Second Amended Complaint (Doc. 59), Wood alleges that in August 2015 he visited the emergency room at Jackson Hospital in Montgomery, Alabama, complaining of back pain and high blood pressure. 2d. Am. Compl. (Doc. 59) p. 4. After being triaged,

Wood spoke with a physician about his back pain and high blood pressure. *Id.* at 4-5. Wood and the physician disagreed about the proper course of treatment for his conditions. *Id.* at 5.

In February 2016, Wood filed a complaint with the ABME alleging professional misconduct against the physician. *Id.* After an investigation, Wood was charged in Alabama's Fifteenth Judicial Circuit with Deceptively Obtaining a Prescription. *Id.* The criminal case was ultimately dismissed in January 2020. *Id.* at 6.

## II.   WOOD'S CLAIM AGAINST THOMAS

Wood asserts a Supervisor Liability claim against Thomas, pursuant to 42 U.S.C. § 1983, in both his official and individual capacities. *Id.* at 4, 10. Thomas is the Chief Investigator for the District Attorney's Office in Alabama's Fifteenth Judicial Circuit. *Id.* at 4, 11. Wood contends that, while acting as a supervisor, Thomas "knew or reasonably should have known that [his] subordinate . . . David Tibbs [("Tibbs")][1], [was] engaging in . . . conduct [] depriving [Wood] of his constitutional rights." *Id.* at 11. To support this claim, Wood contends that Thomas failed to: (1) instruct Tibbs to "avoid the undue influence of outside investigatory personnel who have referred matters to The Office of District Attorney for investigation and prosecution[,]" (2) instruct Tibbs to "independently investigate all matters referred to the Office of District Attorney, and not simply rely upon the findings, conclusions[,] and recommendations of the person or entity making the referral[,]" and (3) train Tibbs to "at all times respect the rights, privileges[,] and

---

[1] Tibbs is an investigator with the Fifteenth Judicial Circuit. 2d Am. Compl. (Doc. 59) p. 4.

immunities of persons who are grand jury targets as guaranteed by The Constitution of The United States[.]" *Id.* at 13. He seeks, *inter alia*, general, special, and punitive damages. *Id.* at 16.

## III. LEGAL STANDARDS

### A. Pro Se Litigants

Federal courts must "show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (italics removed). A document filed pro se is "to be liberally construed," and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted). Despite this leniency, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Importantly, a district court "does not have license to rewrite a deficient pleading," and—like complaints drafted by attorneys—a pro se complaint must be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

### B. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of

3

action, supported by mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 556 U.S. at 555). The Eleventh Circuit explains that "complaints . . . must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (internal quotation and citation omitted). To determine whether a plaintiff has stated a claim, the court should first "eliminate any allegations in the complaint that are merely legal conclusions" and then determine whether the well-pleaded factual allegations of the complaint—assuming their veracity—plausibly give rise to an entitlement to relief." *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotation and citation omitted). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

IV. ANALYSIS

Wood alleges his claim against Thomas in both his official and individual capacities. 2d Am. Compl. (Doc. 59) p. 4. Thomas asserts the affirmative defenses of Eleventh Amendment and qualified immunity. Mot. (Doc. 62) pp. 4-5. For the following reasons, the undersigned concludes that Thomas is entitled to both Eleventh Amendment and qualified immunity and recommends that his Motion to Dismiss be granted.

### A. Wood's claim against Thomas in his official capacity is barred by Eleventh Amendment Immunity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has interpreted the Eleventh Amendment as barring suits by a citizen against his own state, under federal or state law, unless the state has waived its sovereign immunity or Congress has abrogated that immunity under § 5 of the Fourteenth Amendment. *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-15 (1890); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)).

Official capacity suits are simply another way of pleading an action against the official's employing agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thomas is considered a state official for Eleventh Amendment purposes. Thomas is the Chief Investigator for the District Attorney's Office in the Fifteenth Judicial Circuit of the State of Alabama. 2d Am. Compl. (Doc. 59) p. 4. Under Alabama law, an investigator for a district attorney's office is a state employee. *See Hooks v. Hitt*, 539 So. 2d 157, 159 (Ala. 1988).

In *Ex Parte Young*, the Supreme Court carved out an exception to sovereign immunity, holding that suits alleging a violation of the U.S. Constitution against a state official in his official capacity—for prospective injunctive relief—are not suits against the state, and thus do not violate the Eleventh Amendment. *Attwood*, 818 F. App'x at 867

5

(citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)); *see also Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign-immunity purposes."). "To determine whether *Ex Parte Young* permits a suit against a state official, we 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Attwood*, 818 F. App'x at 867 (alterations in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Wood seeks monetary damages, not prospective injunctive relief. 2d Am. Compl. (Doc. 59) p. 16. Therefore, the *Ex Parte Young* exception does not apply and Thomas is entitled to Eleventh Amendment immunity shielding him from Wood's claims for monetary damages. *See McDowell v. Sheppard*, 2021 WL 4341959, at *4 (M.D. Ala. Sept. 23, 2021) (holding that an investigator for a district attorney is a state employee under Alabama law and is thus entitled to Eleventh Amendment protection against claims for money damages).

### B. Wood's claim against Thomas in his individual capacity is barred by qualified immunity.

"Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Bailey v. Wheeler*, 843

F.3d 473, 480 (11th Cir. 2016) ("Qualified Immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the alleged action."). The Supreme Court explains that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021). It is a powerful doctrine that provides a true "*immunity from suit* rather that a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and [his] family's welfare personally—from doing their jobs[.]" *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" including discovery. *Mitchell*, 472 U.S. at 526; *see also Hall v. Flournoy*, 975 F.3d 1269, 1274-75 (11th Cir. 2020). Therefore, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage[.]"). Thus, qualified immunity is an affirmative defense that, when pleaded by a government official, can be

7

raised and considered on a motion to dismiss. *Diaz v. Miami-Dade Cnty.*, 849 F. App'x 787, 790 (11th Cir. 2021).

"To obtain a dismissal based on qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotations and citation omitted); *see also Harlow*, 457 U.S. at 818. Challenged actions are within the scope of an employee's discretionary authority when they were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). "Put differently, [the official] [is] required to show that he was '(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Id.* at 1230-31 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). In applying this test "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *see also Harland*, 370 F.3d at 1266 ("Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." (emphasis in original)).

Once it is established that the government official was acting within his discretionary authority, the burden then shifts to the plaintiff to show that qualified

8

immunity is not appropriate. *Lewis v. Cty. Of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). "To deny qualified immunity at the motion to dismiss stage, we must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation <u>and</u> that the constitutional violation was 'clearly established'." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (emphasis in original) (internal quotations and citation omitted). A motion to dismiss on qualified immunity should be granted "when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (internal quotations and citation omitted). These two prongs can be addressed in any order. *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019).

      **i.    Thomas was acting within the scope of his discretionary authority.**

Thomas was acting within his discretionary authority when the alleged constitutional violation took place. Thomas is the Chief Investigator for the District Attorney's Office in Alabama's Fifteenth Judicial Circuit. Mot. (Doc. 62) p. 3. As Chief Investigator, it would have been well within the scope of Thomas's duties and authority to both train and supervise Tibbs, who is an investigator in the same office. Moreover, Wood does not dispute that Thomas was acting in his discretionary authority. *See generally* Pl.'s Resp. (Doc. 70). As such, the burden shifts to Wood to show that Thomas violated a clearly established constitutional right.

### ii. Wood has not pleaded sufficient facts to show Thomas violated a clearly established constitutional right.

In his Second Amended Complaint, Wood asserts that Thomas failed to adequately train Tibbs. 2d Am. Compl. (Doc. 59) pp. 12-13. "Supervisory liability under § 1983 must be based on something more than the theory of respondeat superior." *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (internal quotation and citation omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676

"[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinates] comes into contact.'" *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *Cty. Of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id.* (alterations in original) (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)). To establish actual or constructive notice of deficient

training, a pattern of similar constitutional violations by untrained employee's is ordinarily necessary. *Id.* at 1053 (quotations and citations omitted).

Wood asserts that Thomas "did willfully and knowingly maintain, enforce, and apply a custom practice, policy and usage tending to encourage promote, sanction, tolerate, maintain and ratify a system of grossly inadequate training of . . . investigators." 2d Am. Compl. (Doc. 59) pp. 11-12. This is a paradigmatic legal conclusion that is entitled to no presumption of truth. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth). Wood attempts to support this bare legal conclusion with allegations that Thomas failed to instruct Tibbs "to avoid undue influence of outside investigatory personnel[,]" "to independently investigate all matters referred to the Office of District Attorney, and not simply rely upon the findings, conclusions[,] and recommendations of the . . . entity making the referral[,]" and "to at all times respect the rights, privileges[,] and immunities of persons who are grand jury targets[.]" *Id.* at 12-13. These allegations are not sufficient to raise Wood's assertion that Thomas violated his constitutional rights beyond a speculative level.

Here, Wood has not adequately alleged that Thomas's individual actions constituted a constitutional violation. Although Wood alleges there are customs and policies in place that promote violations of constitutional rights, he does not identify those policies. Moreover, Wood does not allege a pattern of similar constitutional violations or that Thomas was aware of previous violations and consciously decided not to train his employees to avoid those violations. Wood merely states that Thomas (1) did not instruct

Tibbs on how to avoid influence from those outside agencies and (2) failed to instruct Tibbs on how to properly conduct an independent investigation of criminal referrals. 2d Am. Compl. (Doc. 59) pp. 10-14. Beyond these scanty allegations and legal conclusions, there are no facts relating to Thomas's knowledge of previous constitutional violations or any indifference toward them. "As the Supreme Court has indicated, '[a] [supervisor's] culpability for a deprivation of rights is most tenuous when it turns on a failure to train.'" *Keith*, 749 U.S. at 1053 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (alterations in original). Wood's Second Amended Complaint contains no well-pleaded facts establishing deliberate indifference by Thomas. As such, Wood's allegations are insufficient to sustain a plausible claim against Thomas for failure to train. Accordingly, the undersigned concludes that Thomas is entitled to qualified immunity and recommends that his Motion to Dismiss be granted.

## V.     CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned that Thomas's Motion to Dismiss (Doc. 62) be GRANTED. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 19, 2022. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of

legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 5th day of August, 2022.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE