IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDDIE EUGENE WOOD, JR., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-465-WKW-SMD |
| | ) | |
| DARYL BAILEY, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pro se Plaintiff Freddie Eugene Wood, Jr. ("Wood") brings constitutional and common law claims against Investigator David Tibbs ("Tibbs")[1] arising from his criminal prosecution. In his Motion to Dismiss (Doc. 63), Tibbs argues that Wood's claims are barred by Eleventh Amendment, Absolute, and Qualified immunity. The undersigned recommends that Tibbs's Motion to Dismiss be granted.

**I.   BACKGROUND**

In his Second Amended Complaint (Doc. 59), Wood states that in August 2015 he visited the emergency room at Jackson Hospital in Montgomery, Alabama, complaining of back pain and high blood pressure. 2d. Am. Compl. (Doc. 59) p. 4. After being triaged, Wood spoke with a physician about his back pain and high blood pressure. *Id.* at 4-5. Wood and the physician disagreed about the proper course of treatment for his conditions. *Id.* at 5.

---

[1] Tibbs is an investigator for the District Attorney for the Fifteenth Judicial Circuit of Alabama. 2d Am. Compl. (Doc. 59) p. 4; Mot. (Doc. 63) p. 3.

In February 2016, Wood filed a complaint with the Alabama Board of Medical Examiners ("ABME"), alleging professional misconduct against the physician. *Id.* After an investigation, Wood was charged in Alabama's Fifteenth Judicial Circuit with Deceptively Obtaining a Prescription. *Id.* The criminal case was ultimately dismissed in January 2020. *Id.* at 6.

After dismissal of the criminal case, Wood filed suit in the Circuit Court of Montgomery County, Alabama, asserting federal and state law claims against various government officials involved in the prosecution in both their official and individual capacities. Defendants removed the case to this Court. Not. of Removal (Doc. 1). Following removal and Wood's two amended complaints (Docs. 6, 59), Tibbs filed a Motion to Dismiss (Doc. 63), which is pending before the Court.

## II.  WOOD'S CLAIMS AGAINST TIBBS

Wood asserts two 42 U.S.C. § 1983 claims against Tibbs, in both his official and individual capacities. First, Wood alleges a malicious prosecution claim against Tibbs based on violation of his Fourth Amendment rights. 2d Am. Compl. (Doc. 59) p. 6. Wood asserts that the "actions of [] [] Tibbs . . . shock[] the conscience, and . . . [Tibbs] acted with conscious and deliberate indifference to [Wood's] constitutional rights, and with the purpose of depriving [Wood] of such rights, unrelated to any legitimate law enforcement purpose." *Id.* at 6-8. Wood claims that Tibbs "committed the afore mentioned [sic] acts and omissions knowingly, willfully, and with malice, and with the intent to harm, injure, vex[,] and harass [Wood], with conscious disregard of [Wood's] known rights[.]" *Id.* at 8.

2

Next, Wood asserts a conspiracy to violate civil rights claim. *Id.* at 9. He alleges that, while acting under color of state law, Tibbs, with Defendants John Joseph Groos, III ("Groos") and Stan Ingram ("Ingram"), "conspired, agreed, and federated by and between themselves to initiate an investigation and criminal prosecution of [Wood] without justification or probable cause for the offense of Deceptively Obtaining a Prescription." *Id.* Wood contends that, upon service of the indictment, he "suffered an unlawful and unreasonable seizure of his person in violation of the Fourth Amendment when he was arrested[.]" *Id.* at 10. Wood then repeats his contention that Tibbs, Groos, and Ingram "instituted the criminal prosecution with malice and without probable cause[,]" and further asserts that they "intentionally and/ or recklessly cause[d] [Wood] to suffer extreme emotional distress[.]" *Id.*

## III.  LEGAL STANDARDS

### A. Pro Se Litigants

Federal courts must "show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (italics removed). A document filed pro se is "to be liberally construed," and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted). Despite this leniency, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Importantly, a district court "does not have license to rewrite a deficient pleading," and—

3

like complaints drafted by attorneys—a pro se complaint must be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

### B. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 556 U.S. at 555). The Eleventh Circuit explains that "complaints . . . must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (internal quotation and citation omitted). To determine whether a plaintiff has stated a claim, the court should first "eliminate any allegations in the complaint that are merely legal conclusions" and then determine whether the well-pleaded factual allegations of the complaint—assuming their veracity—plausibly give rise to an entitlement to relief. *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotation and citation omitted). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

IV.    **ANALYSIS**

Wood alleges his § 1983 claims against Tibbs in both his official and individual capacities. As to the official capacity claims, Tibbs argues that, because he is considered a state official, and because Wood seeks money damages, he is entitled to Eleventh Amendment immunity. Mot. (Doc. 63) pp. 6-8. With respect to the individual capacity claims, he asserts that he is entitled to both absolute and qualified immunity. *Id.* The undersigned finds these arguments persuasive and recommends that Wood's federal claims against Tibbs, in both his official and individual capacities, be dismissed with prejudice. As to Wood's state law claims, the undersigned recommends that the Court (1) dismiss Wood's official capacity state law claims with prejudice and (2) exercise its discretionary authority and dismiss Wood's individual capacity state law claims against Tibbs without prejudice.

    **A.  Wood's Federal Claims Against Tibbs**

        **a.  Wood's federal claims against Tibbs in his official capacity are barred by Eleventh Amendment Immunity.**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has interpreted the Eleventh Amendment as barring suits by a citizen against his own state, under federal or state law, unless the state has waived its sovereign immunity or Congress has abrogated that immunity under § 5 of the Fourteenth Amendment. *Attwood v. Clemons*, 818 F. App'x 863,

5

867 (11th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-15 (1890); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)).

Official capacity suits are simply another way of pleading an action against the official's employing agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Tibbs is an investigator for the District Attorney for the Fifteenth Judicial Circuit of Alabama and is considered a state official for Eleventh Amendment purposes. 2d Am. Compl. (Doc. 59) pp. 4; Mot. (Doc. 63) p. 3. Under Alabama law, all District Attorney's offices are considered agencies of the State of Alabama and their employees are considered state employees for Eleventh Amendment purposes. *See Garret v. Talladega Cnty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1376 (N.D. Ala. 2013); *see also Hooks v. Hitt*, 539 So. 2d 157, 159 (Ala. 1988) ("By virtue of the fact that a district attorney is a state employee, we conclude that those in his employ are also state employees."); *see also Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1342 (11th Cir. 1999).

In *Ex Parte Young*, the Supreme Court carved out an exception to sovereign immunity, holding that suits alleging a violation of the U.S. Constitution against a state official in his official capacity—for prospective injunctive relief—are not suits against the state, and thus do not violate the Eleventh Amendment. *Attwood*, 818 F. App'x at 867 (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign-immunity purposes."). "To determine whether *Ex Parte Young* permits a suit against a state official, we 'need only conduct a straightforward inquiry into whether [the]

complaint alleged an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Attwood*, 818 F. App'x at 867 (alterations in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Wood seeks money damages, not prospective injunctive relief. 2d Am. Compl. (Doc. 59) p. 16. Therefore, the *Ex Parte Young* exception does not apply, and Tibbs is entitled to Eleventh Amendment immunity shielding him from Wood's official capacity claims.

### b. Wood's federal claims against Tibbs in his individual capacity are barred by absolute immunity and qualified immunity.

Tibbs makes two arguments concerning Wood's individual capacity claims against him. First, he asserts that, to the extent Wood's claims arise from his conduct before the grand jury, he is entitled to absolute immunity. Mot. (Doc. 63) pp. 8-9. Second, Tibbs argues he is entitled to qualified immunity for Wood's remaining allegations against him. *Id.* at 9-12.

### i. To the extent Wood's claims against Tibbs arise from Tibbs's grand jury testimony, Tibbs is entitled to absolute immunity.

The Supreme Court has held that grand jury witnesses sued under § 1983 are entitled to broad immunity "with respect to *any* claim based on the witness'[s] testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (emphasis in original) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)). This immunity is justified because "a witness'[s] fear of retaliatory litigation may deprive the tribunal of critical evidence." *Id.*; *see also Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("Witnesses are granted absolute immunity for their testimony during trials . . . and during grand jury proceedings." (citations

7

omitted)); *Kelly v. Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994) (explaining that the Eleventh Circuit "has held that testimony before a grand jury is protected by absolute immunity").

Wood twice alludes to Tibbs's participation in the grand jury proceeding that led to his indictment. First, in Wood's malicious prosecution claim, he states that "[a]s a result of the return of the said indictment by the Grand Judy . . . Plaintiff was subsequently arrested[.]" 2d Am. Compl. (Doc. 59) p. 7. Later, in his conspiracy claim, Wood alleges that Tibbs "while acting under color of state law, did unlawfully . . . cause Plaintiff to be indicted by the Grand Jury[.]" *Id.* at 9. Although Wood's claims lack specificity regarding the grand jury proceedings, to the extent the allegations are connected to Tibbs's testimony before the grand jury, they are barred.

### ii. Tibbs is entitled to qualified immunity as to the remaining portions of Wood's claims against him.

"Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) ("Qualified Immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the alleged action."). The Supreme Court explains that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021). It is a powerful doctrine that provides a true "*immunity from suit* rather that a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and [his] family's welfare personally—from doing their jobs." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" including discovery. *Mitchell*, 472 U.S. at 526; *see also Hall v. Flournoy*, 975 F.3d 1269, 1274-75 (11th Cir. 2020). Therefore, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage."). Thus, qualified immunity is an affirmative defense that, when pleaded by a government official, can be raised and considered on a motion to dismiss. *Diaz v. Miami-Dade Cnty.*, 849 F. App'x 787, 790 (11th Cir. 2021).

"To obtain a dismissal based on qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged

9

wrongful act occurred." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotations and citation omitted); *see also Harlow*, 457 U.S. at 818. Challenged actions are within the scope of an employee's discretionary authority when they were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). "Put differently, [the official] [is] required to show that he was '(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Id.* at 1230-31 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). In applying this test "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *see also Harland*, 370 F.3d at 1266 ("Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." (emphasis in original)).

Here, Tibbs was acting within his discretionary authority. Tibbs's alleged actions took place during the investigation, the grand jury proceedings leading to Wood's indictment, and the criminal prosecution in general. 2d Am. Compl. (Doc. 59) pp. 6-10. As an investigator in the District Attorney's Office, it was clearly within Tibbs discretionary authority to assist in investigating, charging, and prosecuting crimes. Accordingly, the first requirement for establishing qualified immunity is satisfied.

Once it is established that the government official was acting within his discretionary authority, the burden then shifts to plaintiff to show that qualified immunity is not appropriate. *Lewis v. Cty. of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). "To deny qualified immunity at the motion to dismiss stage, we must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation <u>and</u> that the constitutional violation was clearly established." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (emphasis in original) (internal quotation omitted); *see also O'Kelley v. Craig*, 781 F. App'x 888, 893 (11th Cir. 2019); *Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles*, 691 F. App'x 584, 589 (11th Cir. 2017). A motion to dismiss on qualified immunity should be granted "when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (internal quotations and citation omitted). These two prongs can be addressed in any order. *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019).

Here, there are no well-pleaded facts to establish a constitutional violation under either of Wood's claims. As such, Tibbs is entitled to Qualified Immunity, and the undersigned recommends that the claims be dismissed with prejudice.

### 1. Malicious Prosecution

To establish a malicious prosecution claim, a plaintiff must first "prove that he suffered a seizure pursuant to legal process that violated the Fourth Amendment." *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020) (citing *Williams v. Aguirre*, 965 F.3d 1147, 1157-59 (11th Cir. 2020)). "This burden requires him to 'establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not

11

otherwise be justified without legal process.'" *Id.* (quoting *Williams*, 965 F.3d at 1165). Second, the plaintiff must fulfill the elements of the common law tort of malicious prosecution. *Id.* This means the plaintiff must prove that (1) officials instituted the criminal process against him with malice and without probable cause and (2) the broader prosecution against him terminated in his favor. *Id.* at 1284-85.

Wood's allegations do not contain enough well-pleaded facts to support his malicious prosecution claim. Beyond his allegation that the prosecution terminated in his favor, *see* 2d Am. Compl. (Doc. 59) p. 8, Wood's complaint consists entirely of legal conclusions. Indeed, Wood's complaint does nothing more than list the essential elements of a malicious prosecution claim and give a brief procedural history of his criminal prosecution. *Id.* at 6-9. These are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court rejected in *Iqbal*. 566 U.S. at 678. Accordingly, Wood's complaint fails to allege a violation of a clearly established constitutional right, and Tibbs is entitled to qualified immunity as to Wood's malicious prosecution claim.

### 2. Conspiracy to Violate Civil Rights

"'A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right.'" *Worthy v. Cty. of Phenix Cty., Ala.*, 930 F.3d 1206, 1224 (11th Cir. 2019) (quoting *Grider v. Cty. of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010)). "A plaintiff attempting to state such a claim must allege that 'the defendants "reached an understanding" to violate the plaintiff's constitutional rights' . . . and that 'an actionable

12

wrong' occurred." *Id.* (quoting *Grider*, 618 F.3d at 1260 (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990))).

Wood again fails to allege sufficient well-pleaded facts to support his conspiracy claim. Wood simply states that "Defendants Groos, Tibbs, and Ingram . . . conspired . . . to initiate an investigation and criminal prosecution of Plaintiff without justification or probable cause." 2d Am. Compl. (Doc. 59) p. 9. Other than this bare legal conclusion that a conspiracy existed, Wood fails to include any well-pleaded facts showing that Tibbs and his co-defendants reached an agreement to deprive him of a constitutional right or that they took any steps in furtherance of that agreement. Therefore, Tibbs is entitled to qualified immunity as to Wood's conspiracy claim.

### B. Wood's State Law Claim Against Groos

#### a. Official Capacity State Law Claims

The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. Art. I. § 14. Thus, the State of Alabama has not waived sovereign immunity. Because the State has not waived sovereign immunity, Alabama state officials are immune from suit in their official capacities. *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). Because Tibbs is considered a state official, *see* Sec. IV(A)(a) *supra*, sovereign immunity shields him from Wood's official capacity state law claims against him.

### b. Individual Capacity State Law Claims

"When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). "Although it is possible for the district court to continue to exercise supplemental jurisdiction over [] pendant claims, *Bagget v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997), if the district court instead chooses to dismiss the state law claims, it usually should do so without prejudice as to refiling in state court." *Vibe Micro, Inc.*, 878 F.3d at 1296 (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

Because the undersigned recommends that Wood's federal individual capacity claims against Tibbs be dismissed with prejudice due to qualified immunity, and because dismissal of the federal claims would occur prior to trial, the undersigned also recommends that the Court dismiss Wood's state-law individual capacity claims against Tibbs without prejudice.

### V. CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned that Tibbs's Motion to Dismiss (Doc. 63) be GRANTED, and that

(1) Wood's federal claims against Tibbs, in both his official and individual capacities, be DISMISSED with prejudice;

(2) Wood's state law claims against Tibbs in his official capacity be DISMISSED with prejudice; and

(3) Wood's state law claims against Tibbs in his individual capacity be DISMISSED without prejudice. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 19, 2022.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 5th day of August, 2022.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

16