IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FREDDIE EUGENE WOOD, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:21-cv-465-WKW-SMD |
| DARYL BAILEY, *et al.*, | ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case arises from the dismissal of a State criminal prosecution against pro se Plaintiff Freddie Eugene Wood, Jr. ("Wood") that was initiated based on an investigation conducted by the Alabama Board of Medical Examiners ("ABME"). After the State criminal matter concluded, Wood filed suit in the Circuit Court of Montgomery County, Alabama, asserting federal and state law claims against various government officials in both their official and individual capacities. The case was then removed to this Court. Not. of Removal (Doc. 1). Following removal and Wood's two amended complaints (Docs. 6, 59), Defendant Stan Ingram ("Ingram")[1] filed a Motion for Summary Judgment (Doc. 68). For the following reasons, the undersigned recommends that Ingram's Motion for Summary Judgment (Doc. 68) be granted.

---

[1] During the alleged violations, Ingram was an investigator with the ABME. Ingram Aff. (Doc. 69-1) ¶ 1.

**I.     WOOD'S CLAIMS AGAINST INGRAM**

Wood asserts two federal claims against Ingram, pursuant to 42 U.S.C. § 1983, in both his official and individual capacities.[2] First, Wood alleges a malicious prosecution claim against Ingram based on violation of his Fourth Amendment rights. 2d Am. Compl. (Doc. 59) p. 6. Wood asserts that the "actions of . . . Ingram . . . shock[] the conscience, and . . . [Ingram] acted with conscious and deliberate indifference to [Wood's] constitutional rights, and with the purpose of depriving [Wood] of such rights, unrelated to any legitimate law enforcement purpose." *Id.* at 6-8. Wood claims that Ingram "committed the afore mentioned [sic] acts and omissions knowingly, willfully, and with malice, and with the intent to harm, injure, vex[,] and harass [Wood], with conscious disregard of [Wood's] known rights[.]" *Id.* at 8.

Second, Wood asserts a conspiracy to violate civil rights claim. *Id.* at 9. He alleges that, while acting under color of state law, Ingram, with Defendants John Joseph Groos, III ("Groos") and David Tibbs ("Tibbs"), "conspired, agreed, and federated by and between themselves to initiate an investigation and criminal prosecution of [Wood] without justification or probable cause for the offense of Deceptively Obtaining a Prescription." *Id.* Wood contends that, upon service of the indictment, he "suffered an unlawful and unreasonable seizure of his person in violation of the Fourth Amendment when he was arrested[.]" *Id.* at 10. Wood then repeats his contention that Ingram, Groos, and Tibbs

---

[2] Wood also asserts state law claims against Ingram in both his official and individual capacities. As explained below, the undersigned recommends that (1) judgment be granted in Ingram's favor as to Wood's official capacity state-law claims and (2) Wood's individual capacity state-law claims be dismissed without prejudice.

"instituted the criminal prosecution with malice and without probable cause[,]" and further asserts that they "intentionally and/ or recklessly cause[d] [Wood] to suffer extreme emotional distress[.]" *Id.*

## II.     RELEVANT FACTS

In August 2015, Wood visited the emergency room at Jackson Hospital in Montgomery, Alabama, complaining of back pain and high blood pressure. Sample Aff. (Doc. 69-2), Ex. C, ¶ 1; Farah Aff. (Doc. 69-3), Ex. E. After being triaged, Wood spoke with a physician, whom he believed to be Dr. Richard Sample ("Dr. Sample"). Ingram Aff. (Doc. 69-1) Ex. A. The physician was actually Dr. Maher Farah ("Dr. Farah"). Farah Aff. (Doc. 69-3) Ex. E.

In February 2016, Wood filed a complaint with the ABME, alleging professional misconduct against Dr. Sample. Ingram Aff. (Doc. 69-1) Ex. A. Ingram was assigned as the investigator for the complaint. *Id.* at ¶ 2. During his investigation, Dr. Sample informed Ingram that Wood had received controlled substances from at least 15 other registered prescribers. *Id.* at ¶ 3; Sample Aff. (Doc. 69-2) ¶ 3. Ingram then consulted the prescription drug monitoring program electronic database, which is standard practice for ABME investigators. Ingram Aff. (Doc. 69-1) ¶¶ 6, 14. Through his use of the database, Ingram determined that, in August 2015, Wood had received a total of 899 scheduled pills from 8 different physicians. *Id.* at ¶ 6. Ingram also discovered that, between March 20, 2015, and February 29, 2016, Wood received scheduled drug prescriptions obtained from 33 practitioners and had them filled at 10 different pharmacies. *Id.* Based on his search,

3

education, and work experience, Ingram concluded that Wood's conduct exhibited drug seeking behavior. *Id.*

Following his investigation, Ingram submitted a report to the ABME. *Id.* at ¶ 9. It is within the sole discretion of the ABME as to what actions are taken against a physician's license. *Id.* at ¶ 10. Ingram does not make any recommendations on complaints filed against physicians and does not participate in discussions or votes. *Id.* at ¶ 11.

In August 2016, the ABME determined that Wood should be reported to local law enforcement for deceptively obtaining a prescription for controlled substances. *Id.* at ¶ 12. Ingram had no involvement with the decision nor did he recommend such action. *Id.* at ¶¶ 11, 12, 17. Wood was later indicted by a Montgomery County grand jury for deceptively obtaining a prescription. *Id.* at ¶ 18. Ingram did not inform the District Attorney's Office about Wood, appear before the grand jury, or testify in court about any proceedings involving Wood. *Id.* Ingram's actions during the investigation were carried out in accordance with established ABME policies and procedures. *Id.*

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue for trial. *Id.* at 323. If the moving party satisfies this burden, the non-moving party must come forward with record evidence showing that a material fact is genuinely in

4

dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The legal elements of a claim or defense determine which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234,1242-43 (11th Cir. 2001). When a summary judgment motion is based on an assertion of qualified immunity, the court must "determine if there is a reasonable dispute of material fact over whether the defendant violated the plaintiff's clearly established constitutional rights." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

**IV. ANALYSIS**

Ingram argues that he is entitled to Eleventh Amendment immunity on Wood's official capacity claims and qualified immunity on Wood's individual capacity claims. Def.'s Br. (Doc. 69) pp. 7-11. As explained below, Wood's official capacity claims are barred as a matter of law, and Wood has failed to raise a genuine issue of material fact as to whether Ingram violated his constitutional rights. As such, the undersigned concludes that, viewing the evidence in the light most favorable to Wood, Ingram is entitled to summary judgment regarding Wood's § 1983 claims. He is entitled to Eleventh Amendment immunity on Wood's official capacity claims.

5

### a. Ingram is entitled to Eleventh Amendment immunity as to all of Wood's official capacity claims.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has interpreted the Eleventh Amendment as barring suits by a citizen against his own state, under federal or state law, unless the state has waived its sovereign immunity or Congress has abrogated that immunity under § 5 of the Fourteenth Amendment. *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-15 (1890); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)).

Official capacity suits are simply another way of pleading an action against the official's employing agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). As an investigator for the ABME, Ingram Aff. (Doc. 69-1) ¶ 1, Ingram is considered a state official for Eleventh Amendment purposes. Accordingly, to the extent Wood seeks money damages against Ingram for his actions carried out in his official capacity, those claims are barred by Eleventh Amendment immunity. *See Waltz v. Herlihy*, 682 F. Supp. 501, 503 (S.D. Ala. 1988) (Explaining that the Eleventh Amendment "precludes [] claims against [] individual defendants for damages to the extent such claims are based upon the actions of [] defendants taken in their official capacities as . . . employees . . . of . . . state agencies[,]" and that "the Alabama Board of Medical Examiners [is] [a] state agenc[y] which [has] not consented to be sued in a federal court.").

6

In *Ex Parte Young*, the Supreme Court carved out an exception to sovereign immunity, holding that suits alleging a violation of the U.S. Constitution against a state official in his official capacity—for prospective injunctive relief—are not suits against the state, and thus do not violate the Eleventh Amendment. *Attwood*, 818 F. App'x at 867 (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign-immunity purposes."). "To determine whether *Ex Parte Young* permits a suit against a state official, we 'need only conduct a straightforward inquiry into whether [the] complaint alleged an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Attwood*, 818 F. App'x at 867 (alterations in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Wood seeks monetary damages, not prospective injunctive relief. 2d Am. Compl. (Doc. 59) p. 16. Therefore, the *Ex Parte Young* exception does not apply.

### b. Ingram is entitled to qualified immunity as to Wood's § 1983 claims against him in his individual capacity.

"Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) ("Qualified Immunity shields public officials from liability

for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the alleged action."). The Supreme Court explains that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021). It is a powerful doctrine that provides a true "*immunity from suit* rather that a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and [his] family's welfare personally—from doing their jobs." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" including discovery. *Mitchell*, 472 U.S. at 526; *see also Hall v. Flournoy*, 975 F.3d 1269, 1274-75 (11th Cir. 2020). Therefore, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage.").

"To obtain a dismissal based on qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged

8

wrongful act occurred." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotations and citation omitted); *see also Harlow*, 457 U.S. at 818. Challenged actions are within the scope of an employee's discretionary authority when they were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). "Put differently, [the official] [is] required to show that he was '(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Id.* at 1230-31 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). In applying this test "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *see also Harland*, 370 F.3d at 1266 ("Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." (emphasis in original)).

Once it is established that the government official was acting within his discretionary authority, the burden then shifts to plaintiff to show that qualified immunity is not appropriate. *Lewis v. Cty. Of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). To overcome a qualified immunity defense, the plaintiff must plead sufficient facts to allege that: (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation. *Morris v. Town of Lexington, Ala.*, 748 F.3d

9

1316, 1322 (11th Cir. 2014). These two prongs can be addressed in any order. *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019).

### i. There is no disputed fact as to whether Ingram was acting within his discretionary authority.

Ingram asserts that during the Wood investigation he was acting within the scope of his ordinary function as an ABME investigator. Ingram Aff. (Doc. 69-1) ¶¶ 1, 15, 19. In his response, Wood fails to present any facts that dispute this assertion. *See generally* Pl.'s Br. (Doc. 80). Accordingly, the burden shifts to Wood to show that "there's a reasonable dispute of material fact over whether [] [Ingram] violated [] [his] clearly established constitutional rights." *O'Rourke*, 378 F.3d at 1206.

### ii. Wood has not presented sufficient facts to support his malicious prosecution claim against Ingram.

To establish a malicious prosecution claim, a plaintiff must first "prove that he suffered a seizure pursuant to legal process that violated the Fourth Amendment." *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020) (citing *Williams v. Aguirre*, 965 F.3d 1147, 1157-59 (11th Cir. 2020)). "This burden requires him to 'establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process.'" *Id.* (quoting *Williams*, 965 F.3d at 1165). Second, the plaintiff must fulfill the elements of the common law tort of malicious prosecution. *Id.* This means the plaintiff must prove that (1) officials instituted the criminal process against him with malice and without probable cause and (2) the broader prosecution against him terminated in his favor. *Id.* at 1284-85.

Here, Wood has failed to provide any facts, accepted as true, that would satisfy the requirements of a § 1983 malicious prosecution claim. He has not established that the procedures leading to his indictment and arrest were unconstitutional. Moreover, he has not produced any evidence suggesting that Ingram initiated the criminal prosecution against him. In his affidavit, Ingram states that after he finalizes his investigative reports, "the ABME makes any decisions regarding whether it should be passed along to local law enforcement." Ingram Aff. (Doc. 69-1) ¶ 8. As an investigator, Ingram "had no involvement in the ABME's decision to refer Mr. Wood to the local authorities[.]" *Id.* at ¶ 12. Ingram "did not make any recommendation to the ABME regarding action, if any, to be taken on the Wood complaint, and [] had no discussion with any member of the ABME regarding this matter." *Id.* at ¶ 17. Finally, Ingram "had no involvement in decisions to charge or indict Mr. Wood or the referral of Mr. Wood to the Montgomery County District Attorney's Office[.]" *Id.* at ¶ 18.

Wood's allegations concerning Ingram's alleged role in his indictment are based solely on speculation, not evidence. First, Wood suggests that Ingram's "experience as an investigator would have the requisite knowledge and experience to get the Credentials Committee to refer Wood to the Montgomery County District Attorney's Office." Pl.'s Br. (Doc. 80) p. 8. Next, Wood states that "the ABME Credentials Committee would have to rely heavily on the contents of the Investigative Report of [] Ingram." *Id.* Finally, Wood seems to suggest that Ingram purposefully left out certain information from his report to influence the Committee to refer the case to law enforcement. *Id.* at 8-9. Notwithstanding the fact that Wood fails to support these assertions with any evidence, none of these

11

allegations show any action by Ingram to initiate a criminal prosecution. Regardless of whether the Committee relied on Ingram's investigative report in referring Wood's case to law enforcement, Wood has failed to show that Ingram himself either recommended a referral or engaged in actions meant to persuade the Committee to refer the case. Indeed, even if Ingram's expertise allows him to hold sway over the ABME, Wood presents no evidence that Ingram exercised it in any way that would improperly influence the ABME to take unwarranted legal action against Wood. Therefore, Wood's malicious prosecution claim fails.

### iii. Wood has not presented sufficient facts to support his conspiracy claim against Ingram.

"'A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right.'" *Worthy v. Cty. of Phenix Cty., Ala.*, 930 F.3d 1206, 1224 (11th Cir. 2019) (quoting *Grider v. Cty. of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010)). "A plaintiff attempting to state such a claim must allege that 'the defendants "reached an understanding" to violate the plaintiff's constitutional rights' . . . and that 'an actionable wrong' occurred." *Id.* (quoting *Grider*, 618 F.3d at 1260 (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990))).

Here, Wood has not provided sufficient facts to support his conspiracy claim. The only clear assertion Wood makes related to his conspiracy claim is that "the act of leaving out specific evidence from his investigation report . . . knowingly would give a different

12

outcome in determine [sic] the validity of Plaintiff's wood [sic] administrative complaint against Dr. [] Sample and also before the Montgomery County grand jury is a willful, conspiratorial act." Pl.'s Br. (Doc. 80) p. 9. The assertion does not support a conspiracy claim. Indeed, Wood appears to allege that Ingram engaged in a conspiratorial act by himself. This is clearly inadequate to establish that Ingram and others conspired to violate Wood's constitutional rights. Therefore, Wood's conspiracy claim fails.

### c. Wood's State Law Claims

#### i. Official Capacity State Law Claims

The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. Art. I. § 14. Thus, the State of Alabama has not waived sovereign immunity, and Alabama state officials are immune from suit in their official capacities. *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). Because Ingram is considered a state official, *see* Sec. IV(A) *supra*, sovereign immunity shields him from Wood's official capacity state law claims against him. As such, Ingram is entitled to summary judgment as to Wood's official capacity state law claims.

#### ii. Individual Capacity State Law Claims

"When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). "Although it is possible for the district court to continue to exercise supplemental jurisdiction over [] pendant claims, *Bagget v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997), if the district court instead chooses to dismiss the state law claims, it usually should do so without prejudice as to refiling in state court." *Vibe Micro, Inc.*, 878 F.3d at 1296 (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

Because the undersigned recommends that Ingram is entitled to summary judgment as to Wood's federal claims, and because dismissal of the federal claims would occur prior to trial, the undersigned also recommends that the Court dismiss Wood's individual capacity state law claims without prejudice.

## V. CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned that Ingram's Motion for Summary Judgment (Doc. 68) be GRANTED, and that

(1) Judgment be entered in Ingram's favor as to Wood's § 1983 claims;

(2) Judgment be entered in Ingram's favor as to Wood's official capacity state law claims; and

(3) Wood's individual capacity state law claims be dismissed without prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 19, 2022. A party must specifically identify the factual findings and legal

conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 5th day of August, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE